In re Emily G. Rosario BARCELO, Debtor.

Deirdre A. Martini, as the United States Trustee, Plaintiff,

v.

We the People Forms & Service Centers USA, Inc., Gail Martin, individually, and We the People Forms and Service Center of Forest Hills, Defendants.

Bankruptcy No. 03–22074–ess.
Adversary No. 04–1117–ess.

United States Bankruptcy Court, E.D. New York.

Aug. 5, 2004.

Gus Michael Farinella, Thomas A. Farinella, Law Offices of Gus Michael Farinella, New York, NY, for Debtor.

Marianne DeRosa, Jericho, NY, for Trustee.

Diana G. Adams, New York, NY, for Plaintiff.

Charles F. Vihon, Western Springs, IL, for Defendant.

### MEMORANDUM DECISION DENYING THE DEFENDANTS' MOTION TO DISMISS COMPLAINT

ELIZABETH S. STONG, Bankruptcy Judge.

Before the Court is the motion to dismiss (the "Motion" or the "Motion to Dismiss") the above-captioned adversary proceeding (the "Adversary Proceeding"), pursuant to Federal Rule of Civil Procedure 12(b)(1), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012(b), of We The People Forms & Service Centers USA, Inc. ("WTP–USA"), Gail Martin, and We The People Forms and Service Center of Forest Hills ("WTP–FH") (collectively the

"Defendants").[1] On February 23, 2004, the United States Trustee (the "UST") filed a complaint (the "Complaint") commencing this Adversary Proceeding which seeks relief for violations of Section 110 of Title 11 of the United States Code (the "Bankruptcy Code"). For the reasons set forth below, the Motion is denied.

### *Jurisdiction*

The Adversary Proceeding was commenced pursuant to Section 110 of the Bankruptcy Code, and therefore arises under the Bankruptcy Code and constitutes a core proceeding as to which the Bankruptcy Court may issue a dispositive order. The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157, 1334, and 11 U.S.C. § 110(j)(1).

### *Background*

On February 23, 2004, the UST filed this Complaint in the Chapter 7 case of Emily Rosario G. Barcelo (the "Debtor").[2] The Complaint alleges, among other things, that at the meeting of creditors conducted pursuant to Section 341 of the Bankruptcy Code (the "341 Meeting"), the Chapter 7 trustee (the "Trustee") learned that the Debtor received incorrect legal advice from WTP–FH. *See* Complaint, ¶ 22. The 341 Meeting was adjourned to give the UST an opportunity further to question the Debtor (the "Adjourned 341 Meeting"). The Complaint also alleges that at the Adjourned 341 Meeting, the UST learned, among other things, that the Debtor paid the Court filing fee to WTP–FH, that WTP–FH filed the Debtor's petition for her, that WTP–FH gave her documents and booklets explaining legal terms and describing how to claim exemptions, and that WTP–USA required her to sign a written "Hold Harmless" agreement exempting them from liability in connection with the Debtor's bankruptcy filing. Complaint, ¶¶ 29, 32, 34, 37, 38.

The Complaint alleges that the Defendants are "engaging in conduct that is (i) unfair and deceptive, and (ii) in violation of 11 U.S.C. §§ 110(f), (g)." [3] Complaint, p. 1. Specifically, the Complaint alleges that "[t]he Defendants have continuously violated the spirit and the law of Section 110 by providing debtors with documents which purportedly enable debtors to determine whether to file bankruptcy, which Chapter to file under, how to properly complete the required forms, and how to protect their assets and obtain a discharge, all without the aid of counsel." Complaint, p. 2. The UST seeks relief against the Defendants for, among other things, using the word "legal" in their advertisements, giving

---

1. The Complaint alleges that We The People Forms and Service Centers, USA, Inc. is a California corporation of which We The People Forms and Service Center of Forest Hills is a franchisee, and that Gail Martin is an individual who works for WTP–FH. Complaint, p. 3.

2. On December 29, 2003, the Debtor filed a motion to convert her case to Chapter 13. Docket No. 03–22074–ess, Entry 9. The Debtor sought conversion on the grounds that she never received proper counsel, and, that after a proper evaluation of the Debtor's financial situation, it appears she has sufficient disposable income to pay back 100% of her unsecured debt. Motion to Convert, Application in Support, ¶¶ 3, 4. A hearing on the conversion was held on January 13, 2004, and on January 14, 2004, the motion was granted. Docket No. 03–22074–ess, Entry 13.

3. Section 110(f) provides that "[a] bankruptcy petition preparer shall not use the word 'legal' or any similar term in any advertisements, or advertise under any category that includes the word 'legal' or any similar term." 11 U.S.C. § 110(f)(1). Section 110(g) provides that "[a] bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition." 11 U.S.C. § 110(g)(1).

debtors advice that exceeds the permissible scope of a bankrupcty petition preparer's services, and requiring debtors to sign a "Hold Harmless" agreement waiving their rights under Section 110 of the Bankruptcy Code. *Id.*

In response, the Defendants moved to dismiss the Adversary Proceeding under Federal Rule of Civil Procedure 12(b)(1), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b), on grounds that (1) this Court lacks subject matter jurisdiction over the Adversary Proceeding because Congress lacked the authority to enact Section 110 under Article I, section 8, clause 4, of the United States Constitution (the "Bankruptcy Clause"); (2) Sections 110(h), (i), and (j) are unconstitutionally vague and overbroad; (3) Section 110 infringes on the Defendants' First Amendment rights; (4) this Court lacks subject matter jurisdiction over the Adversary Proceeding because Section 110 addresses a subject which can be adjudicated only by an Article III court; and (5) an entity which is not a bankruptcy petition preparer ("BPP") is not subject to an action brought pursuant to Section 110. *See* Memorandum in Support of Motion, p. 2. The Court shall address each of these grounds in turn.

### The Standard on a Motion to Dismiss

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), "the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). Further,

"[t]he court may not dismiss a complaint unless 'it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief.'" *Id.* (quoting *Hoover v. Ronwin*, 466 U.S. 558, 587, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984)).

When considering challenges to the constitutionality of a statute, the Court begins with the presumption that acts of Congress are constitutional. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *United States v. National Dairy Prods. Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). Where the statute at issue is an economic regulation—that is, where it adjusts the burdens and benefits of economic life—the challenger must "establish that the legislature has acted in an arbitrary and irrational way," giving rise to a violation of due process. *Usery*, 428 U.S. at 15, 96 S.Ct. 2882.

### Discussion

I. *Section 110 Is a Valid Exercise of Congress's Legislative Authority.*

The Defendants contend that Congress was not authorized to enact Section 110 under its Bankruptcy Clause powers. Memorandum in Support, p. 2. They rely, in large part, on the Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co. ("Marathon")*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which the Defendants interpret as holding that any legislation passed within the ambit of the Bankruptcy Clause must deal directly with the adjustment of the relationship between debtor and creditor.[4]

---

**4.** In making this argument, the Defendants rely on *In re Persky*, 134 B.R. 81 (Bankr. E.D.N.Y.1991), where the court held that Section 363(h) of the Bankruptcy Code was unconstitutional. *In re Persky*, 134 B.R. at 99.

Section 363(h) allows a trustee to "sell both the estate's interest ... and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest" if certain require-

Memorandum in Support, p. 3. The Defendants assert that because Section 110 was enacted pursuant to the Bankruptcy Clause, but has no direct effect on the relationship of debtor to creditor, it is an unconstitutional exercise of legislative authority, and, therefore, it is void. Memorandum in Support, p. 8.

■ When assessing the constitutionality of a statute, the Court must consider the underlying purpose behind the statute in order to determine whether that purpose falls within the scope of the Constitutional directive. *United States v. Biancofiori,* 422 F.2d 584, 586 (7th Cir.1970), *cert. denied,* 398 U.S. 942, 90 S.Ct. 1857, 26 L.Ed.2d 277 (1970). Section 110 of the Bankruptcy Code was enacted in 1994 as part of the Bankruptcy Reform Act, in order to address the "growing problem of bankruptcy preparers who abuse the system in the course of preparing documents for debtors to file" in bankruptcy court. 140 Cong. Rec. S. 4506 (daily ed. April 20, 1994) (statement of Senator Metzenbaum). At the time the statute was enacted, Congress was acutely aware of the growing popularity of BPPs, and the problems arising from their services. *See* 2 COLLIER ON BANKRUPTCY ¶ 110.LH (15th ed. rev.2004) (discussing the concerns leading to the enactment of Section 110, such as faulty legal advice). The purpose of enacting Section 110 was "to police fraud and abuse by ... preparers." S.Rep. No. 103–168, 103rd Cong., 1st Sess. 51 (1993).[5]

The Bankruptcy Clause empowers Congress "to establish uniform Laws on the subject of Bankruptcies." U.S. CONST., art. I, § 8, cl. 4. The Defendants argue that based on the Supreme Court's decision in *Marathon,* any legislation passed pursuant to the Bankruptcy Clause must touch directly upon the restructuring of the debtor-creditor relationship. Memorandum in Support, p. 3 (citing *Marathon,* 458 U.S. at 71, 102 S.Ct. 2858). The Defendants also argue that where Congress passes legislation pursuant to the Bankruptcy Clause that has no direct effect on the relationship of debtor to creditor, then the statute must fail as an unconstitutional use of Congress's Bankruptcy Clause power. Memorandum in Support, p. 8. The Defendants argue that because the work of BPPs is not related to restructuring the debtor-creditor relationship, and is performed before the creation of the bankruptcy estate, it is not within Congress's authority to regulate under the Bankrupt-

ments are met. 11 U.S.C. § 363(h). The Court finds that *In re Persky* is not relevant here, because, among other reasons, Section 363(h) has the purpose of affecting property rights of individuals outside of the bankruptcy system. *See also Sapir v. Sartorius,* 230 B.R. 650, 654 (S.D.N.Y.1999) (distinguishing *In re Persky* ).

5. Section 110 is applicable to a BPP, which is defined as "a person, other than an attorney or an employee of an attorney, who prepares for compensation, a document for filing." 11 U.S.C. § 110(a)(1). The statute contains many safeguards against fraudulent or unauthorized behavior by BPPs. *See* 11 U.S.C. § 110(b) (requiring BPPs to sign the petition); 11 U.S.C. § 110(d) (requiring BPPs to give copies of the petition to debtors); 11 U.S.C. § 110(e) (forbidding a BPP from executing any document on behalf of a debtor); 11 U.S.C. § 110(f) (prohibiting the use of the word "legal" in advertisements); 11 U.S.C. § 110(g) (forbidding a BPP from collecting court fees in connection with filing the petition); 11 U.S.C. § 110(h) (requiring a BPP to file an affirmation disclosing all fees received from or on behalf of the debtor within the twelve months prior to the bankruptcy filling and requiring disgorgement of all fees found to be in excess of the services performed); 11 U.S.C. § 110(i) (authorizing payment of damages to a debtor if the case is dismissed on account of a BPP's negligence or intentional disregard of his or her obligations); 11 U.S.C. § 110(j) (permitting commencement of a civil action to enjoin a BPP from engaging in conduct violating Section 110).

cy Clause. Memorandum in Support, pp. 4–5. This Court is not persuaded by this argument, for several reasons.[6]

■ At the outset, in *Marathon*, the Supreme Court did not, as the Defendants suggest, hold that only those statutes that directly address the restructuring of the debtor-creditor relationship are legitimate under Congress's Bankruptcy Clause powers. Indeed, the very language from *Marathon* cited by the Defendants, placed in context, does not support the Defendants' assertion. The Supreme Court stated that "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights." *Marathon*, 458 U.S. at 71, 102 S.Ct. 2858. The Supreme Court simply does not state, or even imply, that the Bankruptcy Clause authorizes Congress only to adopt legislation that has a direct effect on the restructuring of the debtor creditor relationship.[7]

In addition, the underlying premise of the Defendants' argument, that the conduct of BPPs does not bear on the debtor-creditor relationship or the bankruptcy estate itself, is not sound. The careful and accurate preparation of the bankruptcy petition may have a substantial effect on the debtor's estate, and is essential to the progress of the bankruptcy case. The interests of all parties, including debtors and creditors, may be jeopardized if the petition contains errors or is otherwise improperly prepared. *In re Moore*, 283 B.R. at 857. As a result, "the petition and schedules are at the heart of the bankruptcy process." *Id*. Even if the Defendants' involvement in preparing bankruptcy petitions is limited to placing information on forms, this activity could have a significant effect on the bankruptcy estate and the debtor-creditor relationship. As one court has stated, "[t]here can be no more fundamental exercise of core subject matter jurisdiction by the bankruptcy court than its policing of professionals whom debtors pay to render service in connection with their cases." *In re Douglas*, 304 B.R. at 232.

Although the Defendants assert that they "only assist a potential debtor in the mechanics of preparation of documents" and that the "Defendants in no way are involved with the substance of the information customers request placement [sic] on the forms" (Reply, p. 5), when considering a motion to dismiss, the Court must treat the Complaint's well-pleaded factual allegations as true. Here, the Complaint alleges that the Defendants determined the substance of the information placed on the Petition and also provided legal advice to the Debtor. For example, the Complaint alleges that "the Debtor stated that someone at WTPForestHills told her that if she only owned one property in New York State then no one 'could get to it.'" Complaint, ¶ 23. The Complaint further alleges that the Debtor was advised "that there was more than a 90% chance, given the Debtor's status as a single mother, that nothing would happen to the Co–Op in the bankruptcy." Complaint, ¶ 25. If proved,

---

6. The Court notes that several other courts have considered the same issue and reached the same conclusion. *See, e.g., In re Doser*, 292 B.R. 652 (D.Idaho 2003); *In re Inmon*, No. 303–09111, slip op. (M.D.Tenn. Mar. 12, 2004); *In re Douglas*, 304 B.R. 223 (Bankr. D.Md.2003); *In re Moore*, 283 B.R. 852 (Bankr.E.D.N.C.2002).

7. In further support of this argument, the Defendants cite *In re Bernier*, 176 B.R. 976 (Bankr.D.Conn.1995). *In re Bernier*, however, does not support the principle asserted by the Defendants. There, the court held that bankruptcy laws are valid even where they address rights and interests outside of the debtor-creditor relationship. *In re Bernier*, 176 B.R. at 984–88.

the facts alleged would support a finding that the Defendants' activities had a substantial impact on the Debtor's bankruptcy case.

Moreover, and as other courts have found, Congress's authority to enact Section 110 may be found not only in the Bankruptcy Clause, but also in the Commerce Clause. The Commerce Clause empowers Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. CONST. art. I, § 8, cl. 2. In short, the Commerce Clause authorizes Congress to adopt legislation regulating activities that have a substantial effect on interstate commerce. *See United States v. Lopez,* 514 U.S. 549, 559, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The Supreme Court has found that the Commerce Clause also authorizes consumer protection laws. *See, e.g., Perez v. United States,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971) (upholding statute prohibiting "loan-sharking" under Congress's Commerce Clause powers). Courts have further concluded that the Bankruptcy Clause and Commerce Clause may be considered in tandem to authorize consumer protection laws that affect bankruptcy law and procedure. *See United States v. Fiore,* 434 F.2d 966 (1st Cir.1970), *cert. denied,* 402 U.S. 973, 91 S.Ct. 1659, 29 L.Ed.2d 137 (1971) (upholding statute prohibiting "loan sharking" that protects the right to a bankruptcy discharge under the Commerce Clause and Bankruptcy Clause).

In sum, the Court finds that Congress had the authority to enact Section 110 under the Bankruptcy Clause and the Commerce Clause, and that Section 110 is an appropriate exercise of Congressional authority under these clauses. As a result, the Defendants' argument that this Court lacks subject matter jurisdiction because Congress lacked authority to enact Section 110 must be rejected.[8]

II. *Sections 110(h), (i), and (j) Are Not Unconstitutionally Vague or Overbroad.*

The Defendants also argue that Sections 110(h), (i), and (j) are unconstitutionally vague and overbroad in violation of the First and Fifth Amendments, and therefore unenforceable and void. Memorandum in Support, p. 11. Specifically, the Defendants argue that Section 110(h)[9] does not provide notice as to what constitutes an excessive fee, that Section 110(i)[10]

---

8. The Defendants also argue that, based on *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), Congress may not legislate with respect to BPPs except as permitted under the Bankruptcy Clause, in the same way that a state cannot lose its Eleventh Amendment sovereign immunity by virtue of the Bankruptcy Clause. There, Florida's sovereign immunity was upheld on grounds that the Eleventh Amendment limits the Article III powers of the Judiciary, and may not be circumvented by the Article I powers of Congress. *Seminole Tribe,* 517 U.S. at 72–73, 116 S.Ct. 1114. This Court is not persuaded that *Seminole Tribe* requires, or even supports, a finding that Congress exceeded its Article I authority in adopting Section 110.

9. Section 110(h)(2) provides: "The court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in paragraph (1) found to be in excess of the value of services rendered for the documents prepared." 11 U.S.C. § 110(h)(2).

10. Section 110(i)(1) provides:

If a bankruptcy case or related proceeding is dismissed because of the failure to file bankruptcy papers ... the negligence or intentional disregard of this title or of the Federal Rules of Bankruptcy Procedure by a bankruptcy petition preparer, or if a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court, and the

does not provide guidance as to which practices are prohibited, and that Section 110(j) [11] does not give notice of what type of conduct may be enjoined. Memorandum in Support, p. 12. Further, the Defendants assert that Section 110 both "fail[s] to provide adequate notice of the conduct being sanctioned," and "also fail[s] to provide guidelines to the court in its enforcement of the mandates of the statute." Memorandum in Support, pp. 11–12.

■ First, the Court must address whether Section 110 is unconstitutionally vague on its face in violation of the Fifth Amendment. The bar to a constitutional challenge of this nature is, appropriately, very high. *Hotel & Motel Ass'n of Oakland v. City of Oakland,* 344 F.3d 959, 971 (9th Cir.2003). A statute is vague when it " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute.' " *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (quoting *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954)). As described below, and as other courts have found, a person of ordinary intelligence reading Section 110 would have fair notice of who is covered by the statute and of what conduct is forbidden under it. *See, e.g., In re Doser,* 292 B.R. at 658.

Section 110 defines a BPP in clear and plain terms as "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing" by a debtor in a bankruptcy case. 11 U.S.C. § 110(a)(1). This provides adequate notice of the whose actions the statute reaches.

■ Section 110(h) prohibits the collection of fees "found to be in excess of the value of services rendered for the documents prepared" by a BPP. 11 U.S.C. § 110(h)(2). This provides adequate notice of the conduct that is prohibited—the collection of excessive fees—and courts have not had difficulty in applying this statutory directive to particular facts and circumstances. *See, e.g., In re Doser,* 292 B.R. at 660–61 ("A BPP's compensation is limited to typing services [for which the BPP] should be compensated at a rate of $30 per hour for three hours.") (citations omitted); *In re Bush,* 275 B.R. 69, 84–85 (Bankr.D.Idaho 2002)("[a] BPP can rightfully perform for debtors only the modest service of transcribing or typing bankruptcy forms that the debtors alone must prepare without assistance .... The Court concludes that the proper reference point is what professional typists or word processors would charge."); *In re Doser,* 281 B.R. 292 (Bankr.D.Idaho 2002) (same); *In re Evans,* 153 B.R. 960, 970 (Bankr. E.D.Pa.1993) (services valued at no more than $100). Therefore, Section 110(h) is not impermissibly vague.

■ Section 110(i) permits claims based on the unfair, fraudulent, or deceptive acts of a BPP. 11 U.S.C. § 110(i). But these

---

district court ... shall order the bankruptcy petition preparer to pay the debtor—
  (A) the debtor's actual damages;
  (B) the greater of—
  (i) $2,000; or
  (ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and
  (C) reasonable attorneys' fees and costs in moving for damages under this subsection.

11 U.S.C. § 110(i)(1).

11. "[T]he United States trustee ... may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer." 11 U.S.C. § 110(j)(1).

general terms do not render the statute unconstitutionally vague. It would be impossible for Congress to codify a list of such prohibited practices. The elements of fraudulent .conduct are widely documented in case law, and many statutes, including criminal statutes, attach severe penalties to fraudulent acts. *See, e.g.,* 18 U.S.C. § 157 (imposing fines and penalties for bankruptcy fraud). And, as the UST points out, "the phrase 'unfair and deceptive acts' is a cornerstone of Federal Trade Commission enforcement under 15 U.S.C. § 45(a)(1) .... It appears that no court has found the term 'unfair or deceptive' facially invalid with respect to other federal laws." Opposition, p. 14. This Court agrees. The term "unfair and deceptive" was used by Congress at least as early as 1938, and is used in many federal regulations spanning a broad variety of subjects. *See, e.g.,* 16 C.F.R. § 1.8 (general authority); 7 C.F.R. § 1150.161 (agricultural promotion); 12 C.F.R. § 227.11 (banking); 16 C.F.R. § 14.12 (marketing research); 49 U.S.C. § 41712 (proscribing "unfair or deceptive practice" by air transporters). There is also ample case law defining "unfair and deceptive acts," and many courts have found that the unauthorized practice of law amounts to unfair or deceptive conduct. *See, e.g., In re Doser,* 292 B.R. at 659–60; *In re Bush,* 275 B.R. at 83; *In re Dunkle,* 272 B.R. 450, 456 (Bankr.W.D.Pa. 2002); *In re Moffett,* 263 B.R. 805, 813 (Bankr.W.D.Ky.2001). In light of the common and accepted statutory usage of "unfair and deceptive," and the widely known elements of fraudulent conduct, the Court finds that Section 110(i) is not impermissibly vague.

Finally, Section 110(j) permits the UST to bring a civil action to enjoin a BPP from violating Section 110 and from further acting as a BPP. Since the class of persons affected by the statute is adequately defined, and the conduct proscribed is adequately described in each subsection preceding subsection (j), it follows that Section 110(j) gives a person of ordinary intelligence fair notice of what conduct is forbidden. *See In re Doser,* 292 B.R. at 658 ("Given the definitions in the statute, a person of ordinary intelligence would have fair notice of what conduct was forbidden under § 110."). As a result, the Court finds that Section 110(j) is not impermissibly vague.

Next, the Court must address whether Section 110 is overbroad in violation of the First Amendment. In order to prevail on an overbreadth challenge against a statute that " 'covers a whole range of easily identifiable and constitutionally proscribable ... conduct' ... a litigant [must] demonstrate that the statute 'as applied' to him is unconstitutional." *Secretary of State of Md. v. Joseph H. Munson Co.,* 467 U.S. 947, 965, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (quoting *CSC v. Letter Carriers,* 413 U.S. 548, 580–81, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973)). This requirement gives effect to "the general rule that a litigant only has standing to vindicate his own constitutional rights." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 797, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). "Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment ... the overbreadth doctrine is 'strong medicine' and [is] employed [ ] with hesitation." *New York v. Ferber,* 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)).

The basic premise is "that a law should not be invalidated for overbreadth, unless it reaches a substantial

number of impermissible applications ...." *Ferber*, 458 U.S. at 771, 102 S.Ct. 3348. Additionally, the Supreme Court has "never held that a statute should be held invalid on its face merely because it is possible to conceive of a single impermissible application ...." *Broadrick*, 413 U.S. at 630, 93 S.Ct. 2908. A finding of overbreadth "must be justified by 'weighty countervailing policies.'" *Ferber*, 458 U.S. at 768, 102 S.Ct. 3348 (quoting *United States v. Raines*, 362 U.S. 17, 22–23, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960)). And, as the Supreme Court stated, "where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

■ Another consideration is whether a limiting construction of the statute is available. *See Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908. Where a statute is incapable of limitation, it could potentially "chill the exercise of expressive activity by many individuals ...." *Ferber*, 458 U.S. at 772, 102 S.Ct. 3348. However, where the statute has limitations, or where limitations may reasonably be read into a statute, "the extent of deterrence of protected speech can be expected to decrease with the declining reach of the regulation." *Id.* For these reasons, "[f]acial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908. *See also Ferber*, 458 U.S. at 769, 102 S.Ct. 3348; *In re Inmon*, No. 303–09111, slip op. at 7 (M.D.Tenn. Mar. 12, 2004); *In re Doser*, 292 B.R. at 657–58.

■ Here, it appears that "Section 110 is limited to proscribing unfair and deceptive conduct by BPPs.... [and] is limited to a narrow range of conduct ...." *In re Doser*, 292 B.R. at 658. *See also Ohralik v. Ohio St. Bar Ass'n*, 436 U.S. 447, 463 n. 20, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). The Defendants have not identified a "substantial number of impermissible applications," nor have they demonstrated that "weighty countervailing policies" exist to curtail Section 110's legitimate scope. As a result, the Court finds that Section 110, as applied to the Defendants, is not unconstitutionally overbroad in violation of the First Amendment.

III. *Section 110 Does Not Infringe Impermissibly on the Defendants' First Amendment Rights.*

The Defendants argue that "[Section] 110 violates Defendants' First Amendment right to freedom of speech by restricting the information they can communicate to the public." Memorandum in Support, p. 13. The Defendants also assert that actions such as the Adversary Proceeding "prohibit the distribution of informational material that provides general information about bankruptcy," thereby infringing on the First Amendment right of prospective debtors to have access to the courts, including the right to have information and resources available to enable them to represent themselves. Memorandum in Support, p. 14.

■ The First Amendment protects the right of individuals, groups, and entities to distribute and disseminate information. *See Pacific Gas & Elec. Co. v. Public Utils. Comm'n of Cal.*, 475 U.S. 1, 8, 106 S.Ct. 903, 89 L.Ed.2d 1 (1986). However, this protection is not absolute, and less protection is afforded when dealing with legislation that safeguards against potentially fraudulent, unfair, or deceptive commercial speech. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 562–63, 100 S.Ct. 2343,

65 L.Ed.2d 341 (1980) (*"Central Hudson"*). Congress has substantial discretion in regulating commercial speech, and legislation that regulates commercial speech "is not required to employ the least restrictive means conceivable." *Greater New Orleans Broad. Ass'n v. United States,* 527 U.S. 173, 188, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999). Rather, the standard is only that there must be a "narrow tailoring of the challenged regulation to the asserted interest . . . ." *Id.*

■ In *Central Hudson,* the Supreme Court established a four-part test to resolve First Amendment challenges to commercial speech. As the Supreme Court stated:

> For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson,* 447 U.S. at 566, 100 S.Ct. 2343. As the Supreme Court has also observed, "[t]he four parts of the *Central Hudson* test are not entirely discrete;" but rather, "[e]ach raises a relevant question that may not be dispositive to the First Amendment inquiry, but the answer to which may inform a judgment concerning the other three." *Greater New Orleans Broad. Ass'n v. United States,* 527 U.S. at 183–84, 119 S.Ct. 1923. *See Thompson v. Western States Med. Ctr.,* 535 U.S. 357, 367–68, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002). As discussed below, application of

this test to Section 110 shows that it does not impermissibly infringe on the Defendants' First Amendment rights.

■ At the outset, the Court must consider whether the commercial speech at issue concerns lawful activity and is not misleading. *See Central Hudson,* 447 U.S. at 566, 100 S.Ct. 2343. Here, the Complaint alleges that the Defendants have engaged in speech and conduct that are fraudulent and deceptive, often to the detriment of prospective debtors. *See, e.g.,* Complaint, p. 2, ¶ 22 (incorrect legal advice given to Debtor). Accordingly, the Court's analysis could stop at this point, because the *Central Hudson* test provides that the First Amendment's protections are not triggered as to such conduct.[12] But First Amendment challenges are not lightly to be dismissed, and the Court will assume, for purposes of assessing the Defendants' constitutional arguments, that at least some of the commercial speech at issue concerns lawful activity and is not misleading.

The Court next must consider whether the asserted governmental interest addressed by Section 110 is substantial. *See Central Hudson,* 447 U.S. at 566, 100 S.Ct. 2343. Here, as described above, the government has a substantial interest in the regulation of BPPs, who are not trained in bankruptcy law and who may misguide unsuspecting prospective debtors. *See* 2 COLLIER ON BANKRUPTCY ¶ 110.LH (15th ed. rev.2004) (faulty legal advice was among the concerns leading to the enactment of Section 110). *See also* S.Rep. No. 103–168, 103rd Cong., 1st Sess. 51 (1993) (the purpose of Section 110 was "to police fraud and abuse by . . . preparers."). The government also has a substantial interest in

---

12. In the case of inherently misleading or deceptive commercial speech, the First Amendment affords no protection at all. *See Central Hudson,* 447 U.S. at 562–63, 100 S.Ct. 2343; *Hastings v. United States Trustee (In re Agyekum),* 225 B.R. 695, 698–99 (9th Cir. BAP 1998); *In re Schneider,* 271 B.R. 761, 763–64 (Bankr.D.Vt.2002).

the careful and accurate preparation of bankruptcy petitions and, more generally, in the avoidance of fraud and deception on prospective debtors. Section 110 addresses conduct that poses a genuine risk of tangible harm to prospective debtors, and the consequences of that harm can be severe. *See Edenfield v. Fane*, 507 U.S. 761, 770–71, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993). Thus, the Court concludes that the asserted governmental interest addressed by Section 110 is substantial.

The Court next must consider whether Section 110 directly advances the governmental interest that is asserted. *See Central Hudson*, 447 U.S. at 566, 100 S.Ct. 2343. Here, it is clear from the face of the statute that Section 110 directly advances the government's interest in regulating BPPs, in the careful and accurate preparation of bankruptcy petitions and, more generally, the avoidance of fraud and deception on prospective debtors. By way of illustration, Section 110 regulates deceptive advertising (11 U.S.C. § 110(f)); ensures that the debtor, not the BPP, reviews and signs the bankruptcy petition (11 U.S.C. §§ 110(d) and (e)); prohibits a BPP from collecting court fees from the debtor (11 U.S.C. § 110(g)); and requires a BPP to disclose that it prepared a document for filing and any fees that it received from the debtor in the twelve months prior to filing (11 U.S.C. §§ 110(b), (c), and (h)). As a result, the Court concludes that Section 110 directly advances the governmental interest that it serves.

Finally, the Court must consider whether Section 110 is more extensive than is necessary to serve the governmental interest that is asserted. Here too, it is clear from the face of the statute that Section 110 is appropriately tailored to address the substantial government interest in regulating BPPs. As described above, each of its terms relates to an aspect of preventing fraud and deception in the bankruptcy process. And the fines that are prescribed for violation of the terms are not disproportionate to the harms addressed, and serve as appropriate remedies. *See* 11 U.S.C. §§ 110(b)(2), (c)(3), (d)(2), (e)(2), (f)(2), (g)(2), and (h)(4). *See also Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). As a result, the Court concludes that Section 110 is not more extensive than necessary to serve the governmental interest that is asserted. In sum, applying the Supreme Court's test in *Central Hudson*, this Court concludes that Section 110 does not impermissibly infringe on the Defendants' First Amendment rights.

■ Another perspective from which Section 110 may be viewed is as an economic regulation. Section 110 functions as an economic regulation because it protects consumers by regulating the economic activity of BPPs. *See In re Bankruptcy Petition Preparers Who Are Not Certified Pursuant to Requirements of the Ariz. Supreme Court*, 307 B.R. 134, 142–43 (9th Cir. BAP 2004) ("Section 110 was enacted as part of the Bankruptcy Reform Act of 1994 to set standards for BPPs and to protect consumers from abuses by non-lawyer BPPs."); *In re Farness*, 244 B.R. 464, 467 (Bankr.D.Idaho 2000) ("[T]he statute's main purpose is to protect consumers from abuses by non-lawyer petition preparers."). "[L]aws that regulate economic activity not involving constitutionally protected conduct are subject to a quite lenient test for constitutional sufficiency [and] ... [t]he Bankruptcy Code is such a law." *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 915 (9th Cir.1988) (citing *Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972)). The

Supreme Court has found that if the activity at issue is not constitutionally protected, then a statute will run afoul of the First Amendment only if the "law's application to protected speech [is] 'substantial' ... relative to the scope of the law's plainly legitimate applications ...." *Virginia v. Hicks,* 539 U.S. 113, 119–20, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003).

▇ Here, then, the Court must first consider whether the activity regulated by Section 110 is constitutionally protected. This Court agrees with those other courts that have determined in similar circumstances that "none of the defendants have a constitutional right to earn a living as a bankruptcy petition preparer." *In re Inmon,* No. 303–09111, slip op. at 7 (M.D.Tenn. Mar. 12, 2004). Accordingly, Section 110 addresses an "economic activity not involving constitutionally protected conduct." *In re Kelly,* 841 F.2d at 915. This means that in order to prevail on their First Amendment challenge, the Defendants must show that the application of Section 110 to their protected speech is substantial compared to the harms that the statute addresses.

As described above, Section 110 addresses the avoidance of fraud and deception on prospective debtors. The matters addressed by Section 110 go to the heart of the bankruptcy process. This is because, among other reasons, the failure carefully and accurately to prepare a debtor's bankruptcy petition may ultimately defeat a debtor's discharge, which is the primary goal of bankruptcy. *See Local Loan v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (bankruptcy "gives to the honest but unfortunate debtor ... a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.").

By contrast, the Defendants have not shown that the application of Section 110 to their protected speech is substantial. The Defendants assert that Section 110 impermissibly restricts their right to communicate information to the public. Yet at the same time, the Defendants maintain that they "only assist a potential debtor in the mechanics of preparation of documents" and that they are "in no way [ ] involved with the substance of the information ...." Reply, p. 5. This suggests that Section 110 is not restricting their speech in any substantial way. As one Bankruptcy Appellate Panel found in a similar case, "what [a BPP] really sells are his services, not his books. Thus there has been no constitutional infringement on his First Amendment rights." *In re Crowe,* 243 B.R. 43, 50 (9th Cir. BAP 2000), *aff'd,* 246 F.3d 673 (9th Cir.2000). As another court found:

> The argument rings particularly hollow when one considers the defendants' earlier point that the statements contained in the documents are those of the debtors, and not theirs. If the statements are not those of the defendants, the defendants have no constitutional grounds upon which to maintain a claim for their protection under the First Amendment. If the statements are in fact theirs, and not those of the debtors, the defendants have no constitutional right under the First Amendment or otherwise to render legal advice without a license.

*In re Douglas,* 304 B.R. at 239.

As a result, the Court concludes that the harms address by Section 110 substantially outweigh the application of Section 110 to any protected speech of the Defendants. From this perspective too, then, the Court concludes that Section 110 does not impermissibly infringe on the Defendants' First Amendment rights.

As to the rights of prospective debtors, the Constitution protects the right of the public to receive information. *See Pacific Gas & Elec. Co.*, 475 U.S. at 8, 106 S.Ct. 903. But here, the Defendants have not shown any meaningful infringement on the rights of prospective debtors to receive information about bankruptcy as a result of the application of Section 110. As the UST correctly stated, "nothing in Section 110 restricts debtors' ability to retain an attorney, 'access courts,' or even represent themselves." Opposition, p. 16. That is, Section 110 does not inhibit the ability of potential debtors in bankruptcy to gather information about the process. Additionally, nothing in Section 110 specifically prohibits the distribution of information or other material providing information about the bankruptcy process. Rather, the restrictions established by Section 110 seek to prevent, among other things, injury from the unauthorized practice of law and the dissemination of misleading commercial information. For these reasons, the Court finds that Section 110 does not impermissibly infringe upon the First Amendment rights of BPPs or prospective debtors.

IV. *Proceedings Under Section 110 Do Not Lie Outside the Subject Matter Jurisdiction of the Bankruptcy Court.*

■■■ The Defendants next argue that this matter must be heard by an Article III court, and that this Court does not have subject matter jurisdiction to hear the Adversary Proceeding because it is not "related to" the bankruptcy since "it is hard to see how the conduct of a BPP can affect administration of a debtor's estate." Memorandum in Support, p. 14. In support of this assertion, the Defendants point to that portion of Section 110(i)(1) which states that "if a bankruptcy petition preparer violates this section ... the bank-

ruptcy court shall certify that fact to the district court." Memorandum in Support, p. 15; 11 U.S.C. § 110(i)(1). The Defendants argue that this provision shows that Congress intended that district courts, not bankruptcy courts, would enforce Section 110 on account of the jurisdictional issues that would otherwise arise.

■■■ The starting point for consideration of the Defendants' argument is the full text of Section 110(i)(1):

[I]f a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court, and the district court, on motion of the debtor, the trustee, or a creditor and after a hearing, shall order the bankruptcy petition preparer to pay to the debtor—

(A) the debtor's actual damages;

(B) the greater of—

(i) $2,000; or

(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and

(C) reasonable attorneys' fees and costs in moving for damages under this subsection.

11 U.S.C. § 110(i)(1). Thus, Section 110(i)(1) provides that the bankruptcy court's findings of fact are to be certified to the district court, and in response to a motion of "the debtor, the trustee, or a creditor," shall provide the basis for an award of damages, fees, and costs to an injured debtor. Nothing in Section 110(i)(1) detracts from the authority of the bankruptcy court otherwise to enforce the provisions of Section 110, or to fine or enjoin BPPs for conduct in violation of the statute.

■ The Defendants further argue that fines that may be imposed by a bankruptcy court for violations of Section 110 are "damages and penalties which are criminal in nature." Memorandum in Support, p. 16. The Court disagrees. Rather, Sections 110(b), (c), (d), (e), (f), and (g) fix civil penalties in the form of maximum fines for specified violations of the statute. And the disgorgement of excessive fees under Section 110(h), like other disgorgement remedies, does not constitute "damages," nor is it in any way punitive. *See, e.g., SEC v. Collins,* 2003 WL 21196236, at *5 (N.D.Ill.2003) ("Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment ... the remedy is not designed to punish."); *SEC v. Robinson,* 2002 WL 1552049, at *7 (S.D.N.Y.2002) ("It is well established that disgorgement is remedial rather than punitive, since a fundamental policy underlying disgorgement is to prevent the unjust enrichment of the wrongdoer rather than to punish him.") (citations omitted); *SEC v. McCaskey,* 2002 WL 850001, at *4 (S.D.N.Y.2002) (same); *SEC v. Lorin,* 869 F.Supp. 1117, 1123 (S.D.N.Y.1994) ("disgorgement does not constitute a fine, penalty, or forfeiture"). Rather, disgorgement compensates a debtor for paying more than the value of the services rendered, a value that the court can determine.

In making this argument, the Defendants once again place great weight on the Supreme Court's decision in *Marathon,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *Marathon,* however, addresses the plenary jurisdiction under which the bankruptcy courts operated under pursuant to 28 U.S.C. § 1471, prior to the 1984 amendments to the Bankruptcy Code. In response to *Marathon,* the Bankruptcy Code was amended, and 28 U.S.C. §§ 1334 and 157 now establish original jurisdiction of bankruptcy proceedings in the district court and allow the district courts to delegate a large, and clearly defined, portion of bankruptcy jurisdiction to the bankruptcy courts.

In order to determine whether this Court has jurisdiction over the Adversary Proceeding, it must be determined whether it is a proceeding "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In order to be a proceeding "arising under title 11," a cause of action must be created by a Title 11 statute. These are causes of action that "by their very nature, could only arise in bankruptcy cases." *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1144 (6th Cir.1991). The determination of whether a proceeding is "arising under title 11" is a determination which is to be made by the bankruptcy court pursuant to 28 U.S.C. § 158(b)(3). Here, this Adversary Proceeding arises "under title 11," as it relates solely to a statute found in Title 11, namely, 11 U.S.C. § 110.

Next, the Court must determine whether the proceeding is a core proceeding pursuant to 28 U.S.C. § 157. Section 157 provides in part: "Core proceedings include, but are not limited to—matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). As the Court has already found, the Defendants' alleged violations of Section 110 have an impact on the administration of the bankruptcy case itself, in that the violations have a potential effect on the rights and liabilities of the debtors serviced by WTP–USA and WTP–FH. Therefore, this is a core proceeding. *See also In re Douglas,* 304 B.R. at 232 ("There can be no more fundamental exercise of core subject matter jurisdiction by the bankruptcy court than its policing of professionals whom debtors pay to render service in connection with their cases."). *Accord Taub v. Weber,* 366 F.3d 966 (9th

Cir.2004); *In re Graves*, 279 B.R. 266, 271 (9th Cir.BAP2002); *In re Moore*, 283 B.R. at 857; *In re Shoup*, 290 B.R. 768, 771 (Bankr.C.D.Cal.2003), *aff'd*, 307 B.R. 164 (C.D.Cal.2004); *In re Buck*, 290 B.R. 758, 761 (Bankr.C.D.Cal.2003), *aff'd*, 307 B.R. 157 (C.D.Cal.2004); *In re Gomez*, 259 B.R. 379 (Bankr.D.Colo.2001); *In re Denise Ali*, 230 B.R. 477, 479 (Bankr.E.D.N.Y.1999); *In re Gabrielson*, 217 B.R. 819 (Bankr. D.Ariz.1998). Since "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments," this Court has jurisdiction to hear and make a final adjudication on this matter. 28 U.S.C. § 157(b)(1). In sum, this Adversary Proceeding arises under Title 11, and is a core proceeding. Accordingly, the Defendants' argument that this Court lacks subject matter jurisdiction to hear this Adversary Proceeding must fail.

## V. *The Complaint Adequately Alleges that WTP–USA Is a BPP.*

▉ Finally, the Defendants seek to have the Complaint dismissed against WTP–USA, on grounds that there is no privity between WTP–FH and WTP–USA, as WTP–FH is merely a franchisee of WTP–USA and WTP–USA does not " 'prepare for compensation a document for filing.' " Memorandum in Support, p. 18. According to the Defendants, WTP–USA's involvement is limited to furnishing a package of services, which does not include the preparation of documents but rather includes only the provision of blank forms. Reply, p. 19.

The Bankruptcy Code defines a BPP as "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1). A " 'document for fil-

ing' means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under [Title 11]." 11 U.S.C. § 110(a)(2). A " 'person' includes individual, partnership, and corporation." 11 U.S.C. § 101(41).

The Complaint alleges that WTP–USA operates a document preparation center in White Plains, New York, which is staffed by employees of WTP–USA, and that WTP–USA acts as a BPP within the meaning of the Bankruptcy Code. Complaint, ¶¶ 5, 15. The Complaint also alleges that, with respect to the Debtor's bankruptcy petition, WTP–USA typed in the information for Gail Martin and WTP–FH. Complaint, ¶ 19. The Complaint further alleges that the Debtor identifies WTP–USA in her bankruptcy petition as a BPP that assisted in the preparation of the petition. Docket No. 03–22074, Entry 1 (Petition, Statement of Financial Affairs).

In response, the Defendants assert that the identification of WTP–USA as a BPP on the Debtor's bankruptcy petition is not dispositive and offers some alternative explanations, including that "the debtor might have wanted to impress all who read the statement that it was prepared by an entity which had a relationship with a national organization," or "the debtor might have thought it necessary to identify the franchisor simply because of the franchise relationship, not knowing or understanding exactly what the franchisor/franchisee relationship was," or " the debtor could have misunderstood the question." Reply, p. 21.

But the Defendants' assertion concerning the Debtor's reasons for identifying WTP–USA as a BPP on her bankruptcy petition does not determine the resolution of this issue. On a motion to dismiss, "the court must accept all factual allegations in the complaint as true and draw inferences

from those allegations in the light most favorable to the plaintiff." *Jaghory*, 131 F.3d at 329. The Complaint alleges that the Debtor's only contribution to the Petition was a list of her debts and assets provided to WTP–FH on a form, and further, that WTP–FH gave her the completed Petition to sign about a month after her first visit. Complaint, ¶ 30. This allegation supports an inference that the Defendants, not the Debtor, listed WTP–USA as a BPP on the Debtor's bankruptcy petition. Accordingly, the Court finds that the Complaint adequately alleges that WTP–USA functioned as a BPP in connection with the preparation of the Debtor's bankruptcy petition.[13]

### Conclusion

For the reasons stated herein, the Court finds that it has subject matter jurisdiction over this Adversary Proceeding; that Section 110(h), (i), and (j) are not unconstitutionally vague or overbroad; that Section 110 does not infringe impermissibly on the Defendants' First Amendment rights; and that the Complaint adequately alleges that WTP–USA is a BPP. Therefore, the Motion to Dismiss will be denied. A separate Order in accordance with this Memorandum Decision shall be entered simultaneously herewith.

### *ORDER DENYING THE DEFENDANTS' MOTION TO DISMISS COMPLAINT*

Upon the May 5, 2004, filing of the above-captioned Defendants' motion to dismiss this adversary proceeding, which was commenced by the United States Trustee on February 23, 2004, and by which the United States Trustee seeks relief for violations of Section 110 of Title 11 of the United States Code; and the Court having considered the record herein, including the parties' written submissions and oral arguments at the June 14, 2004, hearing; and for the reasons set forth in this Court's Memorandum Decision dated August 5, 2004; it is hereby

ORDERED, that the Defendants' motion to dismiss is denied.

---

13. The UST also argues that WTP–USA is a BPP in connection with the Debtor's bankruptcy petition because WTP–USA receives twenty-five percent of the fee paid to the franchisee for each legal document prepared. *See* Opposition, Exhibit C (We The People Franchise Agreement). The franchise agreement also provides that "Centers" set up by the franchisor, not the franchisee, prepare the documents for filing. *Id. See also In re Moore*, 283 B.R. at 857–58 (finding that the franchisor and franchisee are engaged in a joint enterprise, and because fees are split with WTP–USA, WTP–USA is a BPP); *In re Inmon*, No. 303–09111, slip op. at 10–11 (Mar. 12, 2004) (declining to conclude as a matter of law that WTP–USA are not BPPs, and citing case law in accord). While not alleged in the Complaint, these matters also support the conclusion that WTP–USA is a BPP.