**In re Leonard SUSTAITA, Jr., Debtor.**

**Richard S. Berry, Appellant,**

**v.**

**United States Trustee; Edward J. Maney, Chapter 13 Trustee; Russell A. Brown, Chapter 13 Trustee, Appellees.**

**BAP No. AZ–09–1350–JuMkKi.**
**Bankruptcy No. 08–05817–RTB.**

United States Bankruptcy Appellate Panel for the Ninth Circuit.

Argued and Submitted on June 18, 2010.

Decided July 9, 2010.

Leonard Sustaita, pro se.

Before: JURY, MARKELL, and KIRSCHER, Bankruptcy Judges.

## OPINION

JURY, Bankruptcy Judge:

After an evidentiary hearing, which appellant Richard S. Berry ("Berry") did not attend, the bankruptcy court entered an Order Imposing Sanctions And Injunction Against Richard S. Berry in favor of appellees—Chapter 13 trustees Edward Maney ("Maney") and Russell Brown ("Brown") and the United States Trustee (the "U.S. Trustee").[1]

The order arose out of an enforcement proceeding against Berry under §§ 110, 526, 527 and 528.[2] The court found Berry

**1.** On March 4, 2010, the U.S. Trustee filed a Notice of Non–Participation in this appeal.

**2.** Unless otherwise indicated, all chapter, section and rule references are to the Bankrupt-

was a "bankruptcy petition preparer" as defined in § 110(a)(1) and a "debt relief agency" as defined in § 101(12A). The court (1) imposed statutory fines against Berry for numerous violations of § 110; (2) ordered Berry to disgorge fees obtained from various debtors for violations of §§ 526, 527 and 528; (3) imposed a civil penalty against Berry under § 526(c)(5)(B) for $100,000; (4) issued a permanent injunction enjoining Berry from acting or advertising in any way as a bankruptcy petition preparer and (5) referred the matter to the United States Attorney's Office (the "U.S. Attorney") for the filing of criminal contempt proceedings against Berry.

Berry filed a Motion For New Trial or, alternatively, Motion For Relief From Judgment, which the bankruptcy court denied.

Berry argues he was denied due process throughout the enforcement proceeding. After a thorough review of the record, we AFFIRM in part and REVERSE in part. We REVERSE the court's decision to impose the $100,000 civil penalty against Berry under § 526(c)(5)(B) because we conclude on this record that Berry did not have explicit notice that the court was acting on its own motion or that a civil penalty under this section was under consideration. We AFFIRM the court's decision in all other respects because we conclude no due process violations occurred.

## I. FACTS

Berry is no stranger to the bankruptcy court in the District of Arizona. Berry was a licensed attorney. After he lost his license, Berry started a business that provided legal-related services, including those pertaining to bankruptcy.

cy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure,

In January 1998, Judge Curley of the Arizona bankruptcy court issued an order permanently enjoining Berry from acting as a bankruptcy petition preparer in the District of Arizona. *See In re Gabrielson,* 217 B.R. 819 (Bankr.D.Ariz.1998). In March 1998, Judge Baum of the Arizona bankruptcy court issued an Order of Civil Contempt and Judgment Against Richard S. Berry, People's Services, Inc., and PLA People's Law. Judge Baum found Berry in contempt of court for willful and intentional violations of an order issued in May 1997 and fined Berry $1 million. *See In re Repp,* 218 B.R. 518 (Bankr.D.Ariz.1998). The U.S. Attorney indicted Berry for criminal contempt. He was tried, without a jury, convicted of a misdemeanor and served six months imprisonment in the Federal Bureau of Prisons.

Later, Berry began actively assisting debtors with their bankruptcy petitions, although Berry contends otherwise.

The debtor in this matter, Leonard Sustaita, Jr. ("Sustaita") filed his Chapter 13 bankruptcy petition on May 20, 2008, stating that he filed pro se. Maney was appointed to serve as the Chapter 13 trustee. It came to light that Berry assisted Sustaita with his bankruptcy filing for a fee of $240. Sastaita's petition did not, however, contain any of the disclosures required by § 110(b)(1) and (c)(1) and Berry failed to provide notice in compliance with § 110(b)(2)(A).

On September 22, 2008, Maney filed an Application for Order to Show Cause for Fines and Disgorgement Against Bankruptcy Petition Preparer Richard S. Berry dba Why Pay A Lawyer ("WPAL"). Maney asserted that Berry was a bankruptcy petition preparer under § 110(a)(1) and alleged numerous violations under the stat-

Rules 1001–9037.

ute. As a result, Maney requested the court to fine Berry $24,000, to order disgorgement of the $240 fee and to order that Berry disclose all of the other bankruptcy cases in which he prepared documents for debtors. Maney mailed the application to Berry at WPAL's address: S. McClintock Dr., Ste. 112, Tempe, AZ 85282 (hereinafter, referred to as the WPAL address).[3]

On September 22, 2008, the court issued an Order to Show Cause ("OSC"), scheduling a hearing for October 16, 2008. The Bankruptcy Noticing Center ("BNC") did not serve Berry with the OSC since he was not a party listed on the Master Mailing List.

On September 28, 2008, Brown joined in Maney's application. Brown alleged that he had reason to believe Berry was involved in at least eleven additional Chapter 13 cases assigned to Brown. Brown further alleged that Berry had violated § 110 in numerous respects and that Berry was a debt relief agency and had violated §§ 526, 527 and 528. Finally, Brown maintained that Berry was in violation of previous injunctions issued in 1997 warranting a $2 million fine against him. In his prayer for relief, Brown requested the court to require "Berry to pay punitive sanctions pursuant to 11 U.S.C. § 526(c)(5)(B)" and to permanently enjoin "Berry from any and all bankruptcy activities". Brown mailed the application to Berry at the WPAL address.

On September 28, 2008, the court issued an OSC in response to Brown's request and consolidated Maney's and Brown's

OSCs for a hearing on October 16, 2008. The BNC sent out a notice regarding the OSC which did not include Berry.

On October 16, 2008, the U.S. Trustee filed a Notice of Appearance and Request for Notice in the matter. The U.S. Trustee mailed its notice to Berry at the WPAL address and also to his residence at E. Wesleyan Dr., Tempe, AZ 85282 (hereinafter, the Wesleyan address),[4] and at Alva Drive, Pine, AZ 85544.

Berry did not attend the October 16, 2008, hearing. The bankruptcy court set an evidentiary hearing for January 13, 2009. The Minute Order reflects that counsel was to provide notice to Berry regarding the hearing.

On November 5, 2008, Maney mailed notice of the evidentiary hearing to Berry at the WPAL address. On December 23, 2008, Maney mailed notice of the evidentiary hearing, which was rescheduled to February 12, 2009, to Berry at the WPAL address and the Wesleyan address.

On January 12, 2009, the U.S. Trustee issued subpoenas to Berry and his wife, Jean D. Berry, under the Sustaita bankruptcy case caption, requiring their appearance for a deposition on February 2, 2009. The subpoenas were mailed to the Berrys at the Wesleyan address, with a copy mailed to the landlord of WPAL using the WPAL address.

On February 5, 2009, Maney filed a Motion to File Unilateral Pre–Trial Statement based on Berry's failure to file any pleadings in the matter and his lack of response to a subpoena to appear to give

---

**3.** We have intentionally omitted the street numbers of all addresses referenced in this decision for two reasons: (1) the street numbers are not in dispute; and (2) the omission might help protect the privacy of the litigants and their families. *But see* Rule 9037, which excludes addresses from the list of personal

identifiers protected by redaction in bankruptcy cases.

**4.** The Wesleyan address is the address Berry listed with the Arizona Department of Motor Vehicles and Berry later admitted that this was his residence address.

testimony. The motion was mailed to Berry at the Wesleyan address.

Maney filed his Unilateral Pre–Trial Statement, and on February 6, 2009, the court granted his motion, but directed the parties to file an amended pre-trial statement if Berry responded with additions.

On February 10, 2009, Berry filed a Motion for Continuance, requesting a sixty to ninety-day continuance. In his motion, Berry acknowledged that he learned of the proceeding against him in late November. Attached to Berry's request was a letter that he faxed to the U.S. Trustee in which he stated that he did not get mail at the WPAL address, but received it at a Post Office Box (the "P.O. Box"). Berry contended that it was unnecessary to subpoena anyone and to merely mail "whatever it is to the Box".

On the same day, Berry filed a Notice and Suggestion of Recusal. Berry's request for recusal was based on Judge Baum's former ruling against him.

On February 12, 2009, the evidentiary hearing took place. Berry did not appear.[5] The court denied Berry's request for a continuance and also denied his request for recusal. After that, numerous debtors testified that they met Berry at the WPAL address and that Berry assisted them in filing their respective cases. At the conclusion of the hearing, the court asked the trustees to lodge orders with requested relief and took the matter under advisement.

Maney mailed the proposed Order Imposing Sanctions and Injunction Against Richard S. Berry to Berry on March 6, 2009, and mailed a revised order to him on June 8, 2009. Both were mailed to Berry at the WPAL address, the Wesleyan address, and his self-designated P.O. Box address. Berry did not file an objection to either of the lodged orders.

The court subsequently made findings of fact and conclusions of law, which were embodied in its order entered on June 11, 2009. On June 23, 2009, the court entered a judgment in favor of Brown.

On June 22, 2009, Berry moved for a new trial under Fed.R.Civ.P. 59, or, alternatively, moved for relief from the judgment under Fed.R.Civ.P. 60.[6] In his motion, Berry alleged that neither he nor WPAL had been served with the OSCs and that he learned of the matter in late November through a telephone call with a staff attorney, Richard Cuellar ("Cuellar"), at the U.S. Trustee's office. Berry maintained that Cuellar indicated that he would send Berry all the pleadings, but Cuellar never did. Berry also asserted that he told Cuellar that he did not receive mail at the WPAL office address and gave him the P.O. Box number where he received his mail. Berry stated that Cuellar never passed on the correct address to the Chapter 13 trustees.

In addition, Berry reminded the bankruptcy judge that he had requested a continuance and also requested the court to recuse itself. He erroneously stated the court had not yet ruled on those matters, although the court's oral rulings were reflected in the Minute Entry for February 12, 2009. Berry asserted several defenses,

5. In his opening brief, Berry provides an unusual explanation for not appearing on behalf of himself. He states that his insurer had not yet appointed counsel for WPAL and, while he could appear himself, he could not appear for the corporation WPAL since he was not an attorney. He says that if he did appear "he would have been considered practicing law without a license, something in part, that 110 [sic] is to prevent as implemented in the Arizona district. . . ."

6. Rules 9023 and 9024 incorporate Fed. R.Civ.P. 59 and 60, respectively.

including, but not limited to: (1) that the work cited in the June 11, 2009, order involved non-debtor parties not covered by § 110; (2) that he never gave any legal advice; and (3) that there was no prohibition under any rules or law preventing Berry from selling bankruptcy kits and giving simple advice on how to fill them out.[7]

Brown and the U.S. Trustee filed opposition. The U.S. Trustee noticed a hearing for August 18, 2009. On July 20, 2009, Berry filed a reply reasserting that he was denied due process and reiterating that he believed the court was biased against him.

At the August 18, 2009, hearing, Berry argued his position and orally moved the court to recuse itself. The court denied his oral motion for recusal, advised Berry to file a written motion, and took the matter under advisement.

On October 8, 2009, the court issued a Minute Entry/Order denying Berry's motion. The court found that the evidence showed Berry had received multiple notices both at the WPAL address and his residence for many months prior to the evidentiary hearing. In addition, the court found that Berry had ample notice, but chose to not appear or defend notwithstanding his knowledge of the hearing.

On October 22, 2009, the court entered an Order Overruling Motion For a New Trial Or, In The Alternative Motion For Relief From Judgment Order.

On October 30, 2009, Berry filed a timely Notice of Appeal, referencing the Order Overruling Motion For a New Trial Or In The Alternative Motion For Relief From Judgment Order, the Order Imposing Sanctions And Injunction Against Richard S. Berry, and the Judgments in favor of Brown and Maney.

7. Although we need not address the merits of Berry's defenses, it is clear from the testimo-

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1), and we do under 28 U.S.C. § 158.

## III. ISSUES

Berry's due process argument is divided into the following sub-issues:

A. Whether the bankruptcy court erred in finding that Berry was properly served under Rule 7004(b)(1);

B. Whether the bankruptcy court erred in finding that Berry had actual and timely notice of the evidentiary hearing;

C. Whether the bankruptcy court erred by not affording Berry additional procedural protections because the penalties, fines and sanctions imposed against him were criminal in nature;

D. Whether the bankruptcy court erred in denying Berry's written and oral motions for recusal.

## IV. STANDARDS OF REVIEW

██ Findings of fact regarding receipt of notice are reviewed for clear error. Rule 8013; *Moody v. Bucknum (In re Bucknum)*, 951 F.2d 204, 206 (9th Cir. 1991). A factual determination is clearly erroneous if the appellate court, after reviewing the record, has a definite and firm conviction that a mistake has been committed. *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

██ Whether adequate due process notice was given in any particular instance is a mixed question of law and fact that we review de novo. *Demos v. Brown (In re Graves)*, 279 B.R. 266, 270 (9th Cir. BAP 2002).

ny of the various debtors that Berry was doing more than simply selling bankruptcy kits.

■ We review the denial of a motion to recuse for abuse of discretion. *United States v. Hernandez,* 109 F.3d 1450, 1453 (9th Cir.1997). We follow a two-part test to determine objectively whether the bankruptcy court abused its discretion. *United States v. Hinkson,* 585 F.3d 1247, 1261–62 (9th Cir.2009). If we determine that the court erred under either part of the test, we must reverse for an abuse of discretion. *Id.* First, we "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *Id.* Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard. *Id.* at 1262 n. 20. We must affirm the court's factual findings unless those findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *Id.*

## V. DISCUSSION

Berry's due process argument has several prongs. He asserts that he was (1) never served with either of the OSCs and improperly served with other pleadings, (2) did not have timely notice of the evidentiary hearing, (3) was deprived of procedural protections that accompany criminal contempt proceedings, and (4) the bankruptcy judge was biased against him. We address each of his contentions in seriatim.

### A. Berry Was Properly Served And Was Afforded Due Process With One Exception

Berry asserts that the Chapter 13 trustees did not comply with the applicable rules for service, citing Rules 9014 and 9020. Berry argues that Rule 9014, which provides for a "summons, service, time for witnesses to appear, etc. . . . was ignored here, as was due process in general".

■ According to Rule 9014, motions shall be served in accordance with Rule 7004. Rule 7004 governs the service of a summons and complaint. Berry contends that there was never a summons issued as required in a contested matter. However, Berry confuses contested matters under Rule 9014 with adversary proceedings under Rule 7001. There is no summons in a contested matter. *Khachikyan v. Hahn (In re Khachikyan),* 335 B.R. 121, 125–26 (9th Cir.BAP 2005) (explaining the differences between a contested matter and adversary proceeding). "[I]n a contested matter, the notice of hearing is treated as a summons and the motion is treated as a complaint." *In re Parker,* 392 B.R. 490, 496 (Bankr.D.Utah 2008).

■ Methods of service for contested matters and adversary proceedings are both governed by Rule 7004. Rule 7004(b)(1) authorizes service by mail on an individual, by mailing a copy of the motion to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession.[8] Berry alleges that the only proper place to serve him by mail was at P.O. Box 26222, Tempe, AZ 85285. However, Rule 7004(b)(1) provides for service by mail addressed to Berry's residence rather than to some P.O. Box he designat-

---

**8.** Rule 7004(b)(1) states as follows:
(b) Service by First Class Mail. Except as provided in subdivision (h), in addition to the methods of service authorized by Rule 4(e)–(j) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:

(1) Upon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession.

ed after the trustees filed their applications for an OSC. Further, Rule 7004(b)(1) provides for service at a place where Berry regularly conducted a business or profession. Under the plain language of the Rule, service on Berry at his residence or business would comply with the Rule.[9]

The record shows certificates of mailing of both Maney's and Brown's applications for an OSC to Berry at the WPAL address. There is also a certificate of mailing of notice of the evidentiary hearing scheduled for January 13, 2009, showing it was mailed to Berry at the WPAL address. Another certificate of mailing of notice of the evidentiary hearing rescheduled to February 12, 2009, shows that it was mailed to Berry at both the WPAL and Wesleyan addresses.

■ Proof of mailing creates a rebuttable presumption of its receipt. *CUNA Mut. Ins. Group v. Williams (In re Williams)*, 185 B.R. 598, 599 (9th Cir. BAP 1995) citing *Bucknum*, 951 F.2d at 207. In *Williams*, we observed that "[t]his rule is a key support of the bankruptcy system's notice by mail. 'If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled.'" *Williams*, 185 B.R. at 599–600. Moreover, the Ninth Circuit in *Bucknum* held that "[t]he presumption can only be overcome by clear and convincing evidence that the mailing was not, in fact, accomplished." *Bucknum*, 951 F.2d at 207.

We interpret some of Berry's argument to mean that the mailings were not sent to any qualifying addresses under Rule 7004(b)(1). He maintains that the zip code

was incorrect for the Wesleyan address and he did not regularly conduct a business or profession at the WPAL address. These contentions regarding service are purely factual matters. *Bucknum*, 951 F.2d at 206. On factual matters we defer to the bankruptcy court unless its findings are clearly erroneous. From our examination of the record, we have no reason to disturb that judgment.

The record shows that Berry offered only self-serving statements in support of his contentions. At the hearing on his Motion For New Trial, Berry admitted that the Wesleyan address was his residence, but maintained that the Post Office had changed the zip code. But there is no evidence in the record that any of the mailings to his residence were returned as undeliverable.

■ Berry mistakenly contends there is a factual issue regarding receipt because there is no affidavit in the record that the mailings were not returned. However, when there is proof of mailing, it was Berry who had the burden to rebut the presumption of receipt with clear and convincing evidence. *Bucknum*, 951 F.2d at 207.

Berry also implies that the mailings to the WPAL address were ineffective since he was "retired" and did "not work full time at the WPAL office". However, at oral argument, Berry admitted that he was at the WPAL address two to three times per week. At another time, Berry states that WPAL was sold in 2004 to his wife, Jean Berry; by implication, the business is his wife's, not his. But there was no evidence in the record that confirmed his assertion. Finally, he argues that he is the statutory agent for WPAL, LLC (which coincidentally has the same address

9. In this regard, Berry's contention that the U.S. Trustee failed to pass on his P.O. Box address to the Chapter 13 trustees is irrelevant.

as WPAL), but the LLC is an internet business and does not conduct business at the WPAL address.

We cannot ignore the testimony of numerous debtors at the February 12, 2009 evidentiary hearing. The debtors indicated that they met Berry at the WPAL address and that they received his assistance with their petitions at the WPAL office. The testimony of the various debtors established that the WPAL address was one that Berry used to regularly conduct business. Since Berry did not avail himself of the opportunity to present opposing evidence at the evidentiary hearing, there is no contrary evidence in the record.[10] Accordingly, we are not left with a firm and definite conviction that a mistake has been made. *Anderson*, 470 U.S. at 573, 105 S.Ct. 1504.

 For service to be proper, it must not only comply with Rule 7004(b)(1), but must comport with due process as well. *See* Rule 9014(a) (providing that "reasonable notice" and an opportunity for a hearing shall be given to the party against whom relief is sought). "The standard for what amounts to constitutionally adequate notice, however, is fairly low; it's 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.'" *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1202 (9th Cir.2008) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950)) *aff'd* —— U.S. ——, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010).

 Although Berry contends he was not served with the OSCs—a contention that is supported by the record—the bank-

ruptcy court found that over several months in the fall of 2008 and early 2009 multiple notices and pleadings were mailed to Berry at both the WPAL and Wesleyan addresses, where "he acknowledged he worked and lived". The record fully supports the court's findings. Accordingly, we conclude that notice of the trustees' applications for an OSC and notice of the evidentiary hearing was sufficient to apprise Berry of the pendency of the enforcement proceeding and afford him an opportunity to present his objections to the trustees' allegations.

 Moreover, Berry admits having actual notice of the proceeding against him at least ten days before the hearing. Generally, actual notice satisfies due process. *Espinosa*, 553 F.3d at 1203. Once Berry spoke with staff attorney Cuellar at the U.S. Trustee's office, he was on notice that an enforcement proceeding was initiated against him. Besides having received numerous pleadings by mail, had Berry made any inquiry following his conversation with Cuellar, he would have discovered that he needed to act to protect his interest. At oral argument, Berry acknowledged in hindsight that he should have followed up.

 "If a party is adequately notified of a pending lawsuit, [he] is deemed to know the consequences of responding or failing to respond, even if gaining actual knowledge requires inquiry into court files, hiring a lawyer or conducting legal research." *Id.* Under these circumstances, we cannot say that Berry was denied due process. Quite the contrary: he knew about the proceeding against him and chose not to appear and defend.

 Berry also complains that the court abused its discretion in not granting

---

**10.** Although Berry's Motion For New Trial was not an evidentiary hearing, Berry did not submit any evidence in support of his various contentions at the one hearing he did attend.

his request for a continuance of the evidentiary hearing since he did not have enough time to prepare. A bankruptcy court has discretion to decide not to continue a hearing. *United States v. 2.61 Acres of Land More or Less,* 791 F.2d 666, 670 (9th Cir. 1985). Four factors are relevant to our inquiry into whether the court abused its discretion in denying a continuance; no one factor is dispositive. *Id.* at 671.

> First, we consider the extent of appellant's diligence in his [or her] efforts to ready his [or her] defense prior to the date set for hearing. Second, we consider how likely it is that the need for a continuance could have been met if the continuance had been granted. Third, we consider the extent to which granting the continuance would have inconvenienced the court and the opposing party, including its witnesses. Finally, we consider the extent to which the appellant might have suffered harm as a result of the district court's denial.

*Id.* Absent a showing of prejudice suffered by Berry, we will not disturb the ruling below. *Id.*

■ The record shows that Berry was not diligent in his efforts to avoid the purported need for a continuance. He was served with various notices and pleadings over several months in the fall of 2008 and early 2009, well before the evidentiary hearing. Yet, Berry requested the continuance just two days before the hearing. Further, a continuance would have been inconvenient for the court, the numerous debtors who were scheduled to testify and the Chapter 13 trustees. Finally, although Berry contends he was harmed because he did not have time to prepare, the record shows otherwise. He had adequate time

to prepare when he received notices and pleadings well in advance of the evidentiary hearing, but he chose to enter an appearance in the matter at the last minute. Under these circumstances, we conclude Berry was not prejudiced and we will not disturb the court's ruling denying his request for a continuance.

■ However, because of due process implications, there are two aspects of the court's decision that give us pause. First, Brown requested injunctive relief under § 110(j),[11] which the bankruptcy court granted. This relief was distinct and separate from contempt relief under Rule 9020 which authorizes a party to proceed by motion to enforce a pre-existing injunction. *See* Rule 9020 (providing that Rule 9014 applies to a motion for contempt); *In re WorldCorp, Inc.,* 252 B.R. 890, 895 (Bankr. D.Del.2000) ("[A]n adversary proceeding is not necessary where the relief sought is the enforcement of an order previously obtained.").

■ A request to enjoin a bankruptcy petition preparer under § 110(j) requires an adversary proceeding unless the court is acting on its own motion. *Graves,* 279 B.R. at 273. There is no indication from this record that the court was acting on its own motion. Berry's failure to "specifically and distinctly" address this issue in the bankruptcy court or in his opening brief constitutes a waiver. *Alcaraz v. INS,* 384 F.3d 1150, 1161 (9th Cir.2004).

■ Nonetheless, even if Berry hasn't waived the issue, failure to provide an adversary proceeding is subject to a harmless error analysis. *USA/Internal Revenue Serv. v. Valley Nat'l Bank (In re Decker),* 199 B.R. 684, 689 (9th Cir.BAP

---

11. Section 110(j) provides that a debtor, the trustee, a creditor, or the United States trustee "may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer."

1996). We conclude that the error was harmless because the court essentially followed the same procedure afforded by an adversary proceeding. The notice procedures are the same whether for a contested matter or adversary proceeding and the record supports the bankruptcy court's finding that Berry was properly served with the trustees' applications for an OSC and notice of the evidentiary hearing. In addition, the record shows that Berry had ample opportunity to file responsive pleadings and to testify, produce witnesses or cross-examine witnesses at the evidentiary hearing. In short, Berry was given all the process he would have received if an adversary proceeding had been filed.

 Our second concern is the court's decision to impose a $100,000 civil penalty against Berry under § 526(c)(5)(B). Section 526(c)(5)(B) authorizes the court to impose an appropriate civil penalty against Berry, if the court *on its own motion or on the motion of the U.S. Trustee* finds that Berry intentionally violated § 526 or engaged in a clear and consistent pattern or practice of violating the section. § 526(c)(5)(B). Although Brown's application urged the court to grant punitive sanctions under this section, a plain reading of Brown's application shows that it was insufficient to alert Berry that the court was acting on its own motion or that a civil penalty under this section was even under consideration.

Moreover, the U.S. Trustee's joinder in Brown's application did not alleviate the need for explicit notice that the U.S. Trustee was moving under § 526(c)(5)(B). The U.S. Trustee has an independent statutory right to file a motion under this section, a right which the Chapter 13 trustee does not have. Further, we cannot say the U.S. Trustee's interests are perfectly aligned with those of the Chapter 13 trustee.

Finally, the Unilateral Pre–Trial Statement, which outlined the issues to be resolved at the OSC evidentiary hearing, made no reference to § 526(c)(5)(B) in the contested issues.

 The Ninth Circuit has held that prior to sanctioning a party, the court must provide the party to be sanctioned with particularized notice to comport with due process. *Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 548 (9th Cir.2004). Such notice necessarily includes a description of the alleged misconduct as well as the source of the court's sanctioning power so that the party would know which factors to address to avoid sanctions.

 This rule is equally applicable to the court's statutory power to act on its own motion when imposing a civil penalty under § 526(c)(5)(B) or to a motion initiated by the U.S. Trustee. Although we believe Maney's and Brown's applications most likely informed Berry of the conduct alleged to be sanctionable under § 526(c)(5)(B), we conclude that Berry did not receive explicit notice that the court was acting on its own motion or considering a civil penalty under § 526(c)(5)(B) nor was there any indication that the U.S. Trustee was moving under this section. Accordingly, we reverse the court's decision to impose a civil penalty against Berry under this section.[12]

However, we affirm the court's decision in all other respects because due process requirements were met.

12. Under 28 U.S.C. §§ 151 and 157, bankruptcy courts are "units" of the district courts to which bankruptcy matters may be referred. Currently, all district courts have entered standing orders referring all bankruptcy cases in their districts to bankruptcy courts. As a result, the statutory reference to "district court" in § 526(c) applies to the bankruptcy court.

## B. The Statutory Penalties, Fines And Sanctions Were Civil In Nature

██ Berry asserts that he was entitled to additional due process protections, reasoning that since the bankruptcy court made the referral to the U.S. Attorney to find him in criminal contempt, the enforcement proceeding against him was in the nature of criminal contempt.

We disagree. The bankruptcy court simply made a referral to the U.S. Attorney's Office; the court did not imprison Berry or impose the equivalent. It is also persuasive that Congress intended the fines and penalties under §§ 110 and 526 as civil in nature when the statutes give the bankruptcy court the authority to impose them.

██ Moreover, monetary fines have not "historically been viewed as punishment." *Hudson v. United States,* 522 U.S. 93, 104, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) ("[T]he payment of fixed or variable sums of money ... ha[s] been recognized as enforceable by civil proceedings since the original revenue law of 1789."); *see also, Martini v. We the People Forms & Serv. Ctrs. USA, Inc. (In re Barcelo),* 313 B.R. 135, 151 (Bankr.E.D.N.Y.2004). In addition, the disgorgement of fees, whether under § 110 or § 526, like other disgorgement remedies, does not constitute "damages," nor is disgorgement in any way punitive. *Barcelo,* 313 B.R. at 151. "Rather, disgorgement compensates a debtor for paying more than the value of the services rendered, a value that the court can determine." *Id.*

In sum, the various fines and penalties were civil in nature and thus Berry received all the procedural protections to which he was entitled (except as noted above under § 526(c)(5)(B)).

## C. The Bankruptcy Court Did Not Abuse Its Discretion In Denying Berry's Written And Oral Motion For Recusal

Berry's last allegation is that the bankruptcy judge's bias against him violated due process. *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (The right to trial by an impartial judge "is a basic requirement of due process.").

"A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises, or, if appropriate, shall be disqualified from presiding over the case." Rule 5004(a). Section 455 of Title 28 provides:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

 "Judicial impartiality is presumed." *First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler,* 210 F.3d 983, 987 (9th Cir.2000); *see also Liteky v. U.S.,* 510 U.S. 540, 554–55, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Generally, allegations of bias or prejudice must stem from some extrajudicial source. *Liteky,* 510 U.S. at 550–55, 114 S.Ct. 1147. If there is no evidence of extrajudicial sources of bias or prejudice, then a charge of partiality would have to be supported on evidence that the judge exhibited "such a high degree of favoritism or antagonism to make fair judgment impossible." *Id.* at 554–55, 114 S.Ct. 1147. Further, evaluations of bias or prejudice are judged from an ob-

jective perspective; "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 222 (9th Cir. BAP 1996).

■ Berry's sole ground for seeking recusal of Judge Baum is based on the judge's previous ruling against him in *In re Repp*. To demonstrate Judge Baum's bias against him, Berry points to another ruling where the judge appointed a Chapter 11 trustee in a bankruptcy case once it came to light that Berry was involved with the debtor.[13] However, "[j]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion," absent a showing of a high degree of antagonism or favoritism in the text accompanying the order or ruling. *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147. There is no evidence in the record that shows Judge Baum obtained information from an "extrajudicial" source nor do any of the facts before us show that the bankruptcy judge exhibited "such a high degree of favoritism or antagonism to make fair judgment impossible."

In sum, the record does not create a reasonable doubt concerning the judge's impartiality. To the extent Berry's due process challenge rests on impartiality grounds, it too must fail.

## VI. CONCLUSION

For these reasons, we AFFIRM in part and REVERSE in part. We REVERSE the court's decision to impose a civil penalty against Berry under § 526(c)(5)(B). We AFFIRM the court's decision in all other respects.

---

**13.** *See In re Hannon B, LLC,* District of Arizona Bankr. Case No. 09–08430, Emergency Motion For Authority to Use Cash Collateral Hr'g Tr., May 12, 2009.