NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-11-1657-MkDKi |
| VALLEY HEALTH SYSTEM, | Bk. No.   07-18293-PC |
| Debtor. | |
| JESSICA LOPEZ, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| POST-EFFECTIVE DATE COMMITTEE OF CREDITORS; ALVAREZ & MARSAL HEALTHCARE INDUSTRY GROUP, LLC, as Disbursing Agent, | |
| Appellees. | |

Argued and Submitted on July 19, 2012
at Pasadena, California

Filed – August 3, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter H. Carroll, Chief Bankruptcy Judge, Presiding

Appearances:   John D. Darling of Hunt Ortmann Palffy Nieves Lubka Darling & Mah, Inc. argued for Appellant Jessica Lopez; Jeffrey L. Kandel of Pachulski Stang Ziehl & Jones LLP argued for Appellees the Post-Effective Date Committee of Creditors and Alvarez & Marsal Healthcare Industry Group, LLC, as Disbursing Agent.

Before:  MARKELL, DUNN and KIRSCHER, Bankruptcy Judges.

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Jessica Lopez ("Lopez") is a former employee of Valley Health System ("VHS") and was a participant in the Valley Health System Retirement Plan ("VHS Retirement Plan").[1] Lopez filed a proof of claim in VHS's bankruptcy case seeking a distribution from that bankruptcy based on her claimed entitlement to benefits under or from the VHS Retirement Plan. But VHS's confirmed chapter 9[2] plan of adjustment ("Chapter 9 Plan") specified, among other things, that any claims held by VHS Retirement Plan participants ("Participants") against VHS would "not be entitled to receive any distributions" under the Chapter 9 Plan.

A Post-Effective Date Committee of Creditors and a disbursing agent appointed under the Chapter 9 Plan (jointly, the "Committee Parties") objected to Lopez's proof of claim. The bankruptcy court sustained the objection and entered an order disallowing Lopez's claim. Lopez appealed, and we AFFIRM.

//

//

//

//

//

---

[1] The parties have a serious and sincere disagreement over whether VHS and VHS Retirement Plan are separate entities. We refer to "VHS Retirement Plan" separately for ease of reference, and not as the result of any legal analysis.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

# FACTS[3]

## A.  VHS, its bankruptcy case, and its Chapter 9 Plan.

VHS is a public agency and a local healthcare district formed in 1946, under the California Local Health Care District Law, Cal. Health & Safety Code § 32000, et seq.  VHS owned and operated one skilled nursing facility and three acute health care facilities in Riverside County, California.  VHS filed a chapter 9 bankruptcy petition in December 2007, and the bankruptcy court entered an order for relief in February 2008.

Pursuant to § 943, the bankruptcy court confirmed VHS's first amended plan of adjustment ("Chapter 9 Plan") by order entered April 26, 2010 ("Confirmation Order").  The Chapter 9 Plan was based on the sale of substantially all of VHS's remaining assets to another entity known as Physicians for Healthy Hospitals, Inc.  Among other things, the Chapter 9 Plan provided for the discharge of VHS's prepetition debts and also enjoined claimants from pursuing any action or proceeding on account of such debts.

---

[3]This is the second appeal originating from VHS's bankruptcy case this Panel has heard.  The first appeal, Kirton v. Valley Health Sys. (In re Valley Health Sys.), 471 B.R. 555 (9th Cir. BAP 2012), appeal docketed, No. 12-60019 (9th Cir. March 21, 2012), concerned a petition for writ of mandamus filed in state court by two other Participants, Peggy Kirton and Diana Agnello, seeking to enforce their alleged VHS Retirement Plan entitlements against VHS and others.  VHS removed that petition to the bankruptcy court, and the bankruptcy court dismissed the petition under Civil Rule 12(b)(6).  Id. at 558.

We vacated the bankruptcy court's dismissal order, holding that the bankruptcy court lacked subject matter jurisdiction over the petition.  Id. at 569.  We draw most of the facts regarding VHS, its bankruptcy case and its Chapter 9 Plan from our prior decision.

The Chapter 9 Plan classified general unsecured claims as Class 2A claims and generally provided for the pro rata distribution of $17 million to the holders of allowed Class 2A claims. The plan then separately classified the Participants as Class 2C claimants and provided no distribution for them. Instead, the Chapter 9 Plan expected the Class 2C claimants to look to the assets left for them, along with their other rights and entitlements, under the VHS Retirement Plan.[4]

The asset sale had expressly excluded all these VHS Retirement Plan assets. As a consequence, the Chapter 9 Plan specified that the Participants as Class 2C claimants would not have recourse as against VHS or its assets, and would not be entitled to any distribution under the Chapter 9 Plan.

This was expressly stated in the Chapter 9 Plan:

> Defined Benefit Plan Participants will be entitled to the same rights and benefits to which such participants are currently entitled under the VHS Retirement Plan and the MetLife Group Annuity Contract, and such participants shall have no recourse to the District or to any assets of the District, and shall not be entitled to receive any distributions under this Plan. Instead, all unallocated amounts held by MetLife Group, pursuant to the VHS Retirement Plan and the MetLife Group Annuity Contract, will continue to be made available to provide retirement benefits for participants in the manner indicated under the provisions of the VHS Retirement Plan and the MetLife Group Annuity Contract. Accordingly, the treatment of Allowed Class 2C claim holders set forth herein shall not affect any legal, equitable or contractual rights to which the VHS Retirement Plan participants are entitled.

Chapter 9 Plan (Dec. 17, 2009) at 16:13-22.

---

[4]In this regard, the primary assets appear to be those held under a group annuity contract administered by MetLife Group.

4

Based on this treatment, the Chapter 9 Plan characterized the Class 2C claimants – the Participants – as unimpaired. As unimpaired claim holders, they were deemed to have accepted the Chapter 9 Plan, and were thus not allowed to vote to accept or reject it. § 1126(f).

The record reflects that Lopez was served with advance notice of: (1) the claims bar date, (2) the court approval of the first amended disclosure statement, and (3) the confirmation hearing on the Chapter 9 Plan. The accuracy of the record is supported by the fact that Lopez filed her proof of claim on time, and before the plan confirmation. The record further indicates that Lopez was sent copies of the Chapter 9 Plan and the first amended disclosure statement at the same time she was served with notice of the confirmation hearing.

But Lopez did not object to VHS's Chapter 9 Plan. According to Lopez, she and other Participants were lulled into a false sense of security regarding the VHS Retirement Plan because VHS's representatives, and the Chapter 9 Plan itself, indicated that the VHS Retirement Plan and the Participants would not be affected by either the bankruptcy case or the Chapter 9 Plan.[5]

On October 14, 2010, VHS issued a notice that the asset sale had closed on October 13, 2010, and that October 13, 2010, was the effective date of the Chapter 9 Plan.

---

[5]Lopez admits that she and other Participants were informed by VHS's representatives at a meeting held on July 7, 2010, that the VHS Retirement Plan was out of funds and would be terminated. It is less than clear why Lopez did not promptly attempt to take action upon learning of these revelations.

5

**B.    Lopez's proof of claim and the Committee Parties' claim objection**

Lopez timely filed her proof of claim in VHS's bankruptcy case on August 22, 2008.  On its face, the Proof of Claim stated that it was based on Lopez's alleged entitlement to a "retirement benefit."[6]  A single page is attached to the Proof of Claim: a copy of Lopez's VHS Retirement Plan employee benefit statement for the year ending December 31, 1996.  This statement estimated that, if Lopez continued her employment with VHS until her designated retirement date in 2018 and continued to participate in the VHS Retirement Plan, she would receive a monthly pension benefit upon retirement of $3,761.43 per month.[7]

On April 8, 2011, the Committee Parties filed a motion to disallow Lopez's proof of claim.  According to the the Committee Parties, Lopez was a Class 2C creditor who was not entitled to any distribution under the Chapter 9 Plan, and thus her claim was subject to disallowance.

On September 14, 2011, Lopez filed a voluminous response to the Committee Parties' claim objection.  Lopez did not contest that, under the terms of the Chapter 9 Plan, she was not entitled

---

[6]In the proof of claim, Lopez asserted that her claim was entitled to priority status under § 507(a)(5), but that Bankruptcy Code section is inapplicable in chapter 9 cases.  See § 901(a).

[7]According to both Lopez and the Chapter 9 Plan, in May 1999, the VHS Retirement Plan was "frozen," in the sense that no new contributions were to be made by VHS, because the VHS Retirement Plan was claimed to be overfunded.  Lopez and the other Participants apparently ceased to accrue any new benefits thereafter.

6

to a share of the funds set aside for distribution to other unsecured creditors of VHS. Indeed, Lopez essentially conceded that she qualified as a Class 2C creditor under the Chapter 9 Plan and that the Chapter 9 Plan provided for no distribution to Class 2C creditors.

Rather, Lopez argued that the Chapter 9 Plan was subject to being set aside under § 1144 or under § 105(a) based on fraud in the procurement and based on inadequate notice. In essence, Lopez argued that, in order to lull the Participants into a false sense of security so that none of them would object to confirmation of the Chapter 9 Plan, VHS and its representatives on numerous occasions represented that the Participants did not need to worry about VHS's bankruptcy case and would not be affected by the Chapter 9 Plan. Lopez further claimed that VHS and its representatives concealed from the Participants the true state of affairs until the July 7, 2010 meeting held shortly after confirmation: (1) that VHS had underfunded the VHS Retirement Plan and/or had raided the monies set aside for funding the plan; (2) that VHS wrongfully had exercised control over the VHS Retirement Plan and effectively was preventing the VHS Retirement Plan's fiduciaries from fulfilling their duties to ensure that the VHS Retirement Plan was adequately funded; and (3) that VHS secretly intended to terminate the VHS Retirement Plan well before it confirmed its Chapter 9 Plan, but it concealed this fact in order to avoid any additional impediments to confirmation of its Chapter 9 Plan.

Meanwhile, Lopez's contentions regarding inadequate notice were twofold. On the one hand, Lopez complained that some

7

Participants, unlike herself, received no notice whatsoever of VHS's bankruptcy. On the other hand, Lopez complained that the notice she received was ineffective in light of the alleged acts of concealment and misinformation referenced above.

Lopez also spent a great deal of time and effort outlining the various alleged statutory and contractual duties VHS supposedly breached. But Lopez never really tied this discussion to any relief that Lopez contends she might have been entitled to on account of her proof of claim, which only sought a distribution based on her claimed entitlement to retirement benefits. At most, Lopez argued that the bankruptcy court should hold in abeyance its decision on Lopez's proof of claim until after Lopez and others had commenced and prosecuted an action against VHS, which in part would have sought modification and/or revocation of VHS's Chapter 9 Plan.

Lopez also focused on her allegation that VHS and the VHS Retirement Plan were separate entities, with separate boards and separate agents for service of process. According to Lopez, the VHS Retirement Plan, as a separate entity, was not properly subject to VHS's control, and thus her entitlement to benefits from the VHS Retirement Plan could not have been validly affected by either VHS or its Chapter 9 Plan. However, Lopez never explained how this allegation, even if true, would have entitled her to a distribution from VHS on account of her proof of claim for retirement benefits, when VHS's Chapter 9 Plan explicitly precluded Lopez from receiving such a distribution.

On September 21, 2011, the Committee Parties filed a reply in support of their claim objection. In it, the Committee

8

Parties emphasized (1) that Lopez had notice of the VHS bankruptcy and an opportunity to object to its Chapter 9 Plan, (2) that the Chapter 9 Plan, which the bankruptcy court had confirmed, specified that Class 2C creditors would not be entitled to any distribution, and (3) that Lopez's claim constituted a Class 2C claim, a claim seeking a distribution on account of Lopez's alleged entitlement to benefits under the VHS Retirement Plan. According to the Committee Parties, the doctrine of claim preclusion barred Lopez from collaterally attacking the Chapter 9 Plan, and neither § 1144 nor § 105(a) afforded Lopez with a proper basis to seek either modification or revocation of the Chapter 9 Plan.

After holding a hearing on the claim objection, the bankruptcy court issued a memorandum decision in which it essentially agreed with the Committee Parties' arguments. Accordingly, on November 8, 2011, the bankruptcy court entered an order sustaining the Committee Parties' claim objection and disallowing Lopez's claim. Lopez timely filed a notice of appeal on November 18, 2011.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(2)(B), and we have jurisdiction under 28 U.S.C. § 158(b) as this is a final order from the resolution of a proof of claim.

**ISSUE**

Whether the bankruptcy court erred when it disallowed Lopez's proof of claim.

**STANDARDS OF REVIEW**

Orders resolving claims objections can raise legal issues,

9

which we review de novo, as well as factual issues, which we review under the clearly erroneous standard. See Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 918 (9th Cir. BAP 2011).

**DISCUSSION**

The key to this appeal is Lopez's proof of claim. The principal purpose of that proof of claim, as with any proof of claim, is to assert an entitlement to a share of any assets designated for distribution. See 4 Collier on Bankruptcy ¶ 501.01[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2012).[8]

Here, Lopez based her proof of claim on her claimed entitlement to benefits under the VHS Retirement Plan, but VHS's Chapter 9 Plan specified that Participants under the VHS Retirement Plan would have no recourse against either VHS or its assets and would not be entitled to any distribution under the Chapter 9 Plan. Lopez indisputably had actual notice of the Chapter 9 Plan and its contents, and had an opportunity to object, but did not do so before the plan was confirmed.

Under these circumstances, Lopez is precluded from now objecting to how VHS's Chapter 9 Plan treated her retirement

---

[8]Lopez contends that the bankruptcy court lacked jurisdiction to consider and disallow her proof of claim, but this contention has no merit. It is well settled that the claims allowance process is "integral to the restructuring of the debtor-creditor relationship" and hence is subject to the bankruptcy court's jurisdiction. Langenkamp v. Culp, 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (per curiam) (citing Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 57-58, 109 S.Ct. 2782, 2798-99, 106 L.Ed.2d 26 (1989)).

10

benefits claim. See § 944(a); see also United Student Aid Funds, Inc. v. Espinosa, --- U.S. ----, 130 S.Ct. 1367, 1374-75, 176 L.Ed.2d 158 (2010) (confirmed chapter 13 plan discharged student loan debt); Stratosphere Litigation L.L.C. v. Grand Casinos, Inc., 298 F.3d 1137, 1143 (9th Cir. 2002) (confirmed chapter 11 plan released third party from funding obligation arguably owed to debtor); Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee), 193 F.3d 1083, 1086-87 (9th Cir. 1999) (confirmed chapter 13 plan discharged postpetition interest on student loan); Trulis v. Barton, 107 F.3d 685, 691 (9th Cir. 1995) (confirmed chapter 11 plan released all claims of country club members against debtor country club's founders, directors and attorneys).

As she argued in the bankruptcy court, Lopez argues on appeal that she was not given adequate notice of the Chapter 9 Plan's impact on her. According to Lopez, the misleading statements regarding the effect of the Chapter 9 Plan on Participants like her amounted to a violation of her due process rights. Consequently, she argues, she should not be bound by the terms of the Chapter 9 Plan.

We disagree. The Chapter 9 Plan was not misleading regarding how the claims of Participants would be treated: it unequivocally stated that they would receive nothing from VHS, its assets, or its Chapter 9 Plan.

Moreover, due process does not require that any notice given explain the potential legal and practical effects of proposed judicial action; rather, as long as a party is given notice of the action and is afforded an opportunity to object, due process

11

requirements are satisfied. _Espinosa v. United Student Aid Funds, Inc._, 553 F.3d 1193, 1203 (9th Cir. 2008), _aff'd_, --- U.S. ----, 130 S.Ct. 1367; _Berry v. U.S. Trustee (In re Sustaita)_, 438 B.R. 198, 210 (9th Cir. BAP 2010), _aff'd_, 460 Fed. Appx. 627 (9th Cir. 2011); _see also_ _Acequia, Inc. v. Clinton (In re Acequia, Inc.)_, 787 F.2d 1352, 1359-60 (9th Cir. 1986) (concluding that shareholder had adequate notice that evidence of his misconduct was relevant to, and would be considered at, plan confirmation hearing, where disclosure statement filed in support of plan outlined allegations of shareholder's misconduct); _Lawrence Tractor Co. v. Gregory (In re Gregory)_, 705 F.2d 1118, 1122-23 (9th Cir. 1983) (holding that notice given to unsecured creditor, even though incomplete and ambiguous, satisfied due process requirements because it was sufficient to give the creditor inquiry notice of the actions the debtor sought to take pursuant to his proposed plan).

Lopez also argues on appeal that the bankruptcy court erred when it denied her request to continue the hearing on its disposition of her proof of claim until she brought and prosecuted an action that in part would seek to modify or revoke the Chapter 9 Plan. But we agree with the bankruptcy court that, on the record presented, no delay was necessary because any action to modify or revoke the Chapter 9 Plan would have been futile.

Lopez contended that modification or revocation could have been granted under either § 1144 or under § 105(a), but neither of these statutes would have justified either revocation or modification here. We will address each statute in turn.

12

Section 1144 applies in chapter 9 cases.  See § 901(a).  That section is the only remedy available for revocation of an order confirming a plan, and only permits revocation when confirmation of the plan was procured by fraud.  Dale C. Eckert Corp. v. Orange Tree Assocs., Ltd. (In re Orange Tree Assocs., Ltd.), 961 F.2d 1445, 1447 (9th Cir. 1992).  Section 1144(a) sets a six-month limitation period for seeking plan revocation, and that limitation period begins to run from plan confirmation.  Furthermore, even if the grounds for claiming fraud are not discovered until after the limitations period has run, the Ninth Circuit has held that such belated discovery of the fraud does not toll the § 1144(a) limitations period.  In re Orange Tree Assocs., Ltd., 961 F.2d at 1447; see also Duplessis v. Valenti (In re Valenti), 310 B.R. 138, 145 (9th Cir. BAP 2004) (stating that cognate statute under chapter 13 similarly limits complaints to revoke confirmation of a chapter 13 plan).  See also Collier, supra, ¶ 1144.02 ("The 180-day deadline applies even if the fraud is not discovered until after expiration of the 180-day period."); 680 Fifth Ave. Assocs. v. EGI Co. Servs., Inc. (In re 680 Fifth Ave. Assocs.), 209 B.R. 314, 323 (Bankr. S.D.N.Y. 1997).

While the parties here dispute whether the alleged fraud was discovered before or after the § 1144(a) limitations period ran, that issue is not material to our resolution of Lopez's revocation argument.  It is undisputed that Lopez did not commence an action before the limitations period ran, so Lopez cannot avail herself of any relief under § 1144(a).

Meanwhile, § 105(a) facilitates the authority the Bankruptcy

13

Code grants to bankruptcy courts by generally authorizing them to "issue any order, process, or judgment that is necessary or appropriate <u>to carry out the provisions of this title</u>."  § 105(a) (emphasis added).  But this authorization does not allow bankruptcy courts to depart from the Bankruptcy Code's statutory scheme or to take acts inconsistent with it.  <u>See</u> <u>Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)</u>, 325 F.3d 1168, 1174-75 (9th Cir. 2003) (holding that § 105(a) does not give bankruptcy court a "roving commission to do equity" but rather only authorizes the court to act within the confines otherwise set by the Bankruptcy Code);  <u>Johnson v. TRE holdings LLC (In re Johnson)</u>, 346 B.R. 190, 196 (9th Cir. BAP 2006) (same); <u>In re Valenti</u>, 310 B.R. at 145-46 (holding that § 105(a) "is not an independent basis for relief beyond the scope of the other sections of the Bankruptcy Code.").

Simply put, Congress made it abundantly clear in § 1144(a) that a revocation action must be brought within six months of confirmation, and § 105(a) does not permit the bankruptcy court to depart from the statutory scheme and extend the § 1144(a) time limit.

The bankruptcy court was exercising its discretion when it declined to delay its ruling on the claim objection, <u>In re Sustaita</u>, 438 B.R. at 211, and we will not disturb that exercise of discretion absent a showing of prejudice.  <u>Id.</u>  Because postponing the decision on the claim objection so that Lopez could pursue relief under § 1144(a) and § 105(a) would have been futile, the bankruptcy court could not have abused its discretion

14

when it declined to delay its decision on the claim objection.[9]

Lopez makes a number of other arguments in her appeal briefs, but none of them have any merit. They all hinge on the premise that the VHS Retirement Plan was a separate entity from VHS and that neither the bankruptcy court nor VHS properly could have affected the VHS Retirement Plan's assets or obligations. Even if we were to assume that the VHS Retirement Plan was a separate entity, nothing that Lopez argues explains why this would alter Lopez's rights <u>as against VHS</u> on account of the proof of claim that Lopez filed <u>against VHS</u>. If, as Lopez contends, the VHS Retirement Plan is a separate entity and the VHS Retirement Plan (rather than VHS) is obligated to provide to her retirement benefits,[10] these facts tend to undermine rather than enhance any argument that Lopez holds an allowable claim for retirement benefits against VHS. In short, regardless of whether the VHS Retirement Plan is a separate entity from VHS, none of

---

[9]<u>Sustaita</u> cited four factors relevant to deciding whether the trial court properly exercised its discretion in denying a continuance: (1) the appellant's diligence, (2) the likely efficacy of granting a continuance in satisfying the articulated need therefor, (3) inconvenience to the opposing party, and (4) harm resulting from the denial of the continuance. While the absence of prejudice is sufficient by itself to end the inquiry, we note that, based on the circumstances presented here, none of the cited factors militated in favor of a continuance of the claim objection proceeding.

[10]In both her opposition to the claim objection and in her opening appeal brief, Lopez argued that she is not even a proper creditor of VHS based on her entitlement to retirement benefits from the VHS Retirement Plan. Lopez does not seem to appreciate that, if she is not a creditor of VHS, she cannot be entitled to an allowed claim against VHS or to a distribution from VHS's bankruptcy case.

15

Lopez's arguments explain why Lopez is entitled to a distribution for retirement benefits under VHS's Chapter 9 Plan.

**CONCLUSION**

For all of the reasons set forth above, we AFFIRM the bankruptcy court's order sustaining the Committee Parties' claim objection and disallowing Lopez's claim.